IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERNESTO MORENO-GOMEZ, a Costa Rican National, TOTAL-PET S.A., a Costa Rican *sociedad anonima*; NEW WORLD RECYCLE, S.A., a Costa Rican sociedad anonima, TOTAL PET CORP., a British Virgin Islands Company,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERTO PONCE-ROMAY, an individual, WILLIAM MUECKE, an individual, JOSE PABLO CORDERO, an individual, JOACHIM ALEXANDER VON DER GOLTZ, an Individual, CORE CO. I LIMITED PARTNERSHIP, a Delaware Limited Partnership, CORECO CENTRAL AMERICA FUND I, a Delaware Limited Partnership, INVERMASTER, a Costa Rican entity, DOES I through X, inclusive, and ROE ENTITITES XI through M, inclusive,<br><br>Defendants. | C.A. No. 16-163-GMS<br><br>**JURY TRIAL DEMANDED** |

## MEMORANDUM

### I. INTRODUCTION

Plaintiffs Ernesto Moreno-Gomez, Total-Pet S.A. ("Total-Pet"), New World Recycle, S.A. ("New World"), and Total Pet Corp ("TP") initiated this action against Defendants Roberto Ponce-Romay, William Muecke, Jose Pablo Cordero, Joachim Alexander Von Der Goltz, Core Co. I Limited Partnership ("Coreco"), Coreco Central America Fund I ("CCAF"), Invermaster, Does I through X, inclusive, and Roe Entities XI through M, inclusive, on March 16, 2016. (D.I. 1). Plaintiffs allege a total of eleven claims against Defendants relating to Coreco's and CCAF's

takeover of Total-Pet. *Id.* Only one of Plaintiffs' claims is a federal claim, brought under § 10(b) of the Exchange Act and Rule 10b-5 for securities fraud. *Id.* Presently before the court is Invermaster's motion to dismiss for lack of subject matter jurisdiction, personal jurisdiction, and failure to state a claim. (D.I. 27). The court will grant Invermaster's motion to dismiss for failure to state a claim. Because dismissal disposes of the case in its entirety, the court declines to address Invermaster's other grounds for dismissal. Plaintiffs are granted leave to amend the Complaint.

## II. BACKGROUND

Total-Pet is a Costa Rican company, and wholly owned subsidiary of TP, that was in the business of producing plastic bottles for corporations in Costa Rica. (D.I. 1 ¶ 17). It aimed to create a new recycling division of the company called New World. *Id.* ¶ 18. Total-Pet determined that it would need about $12,500,000 USD to fund the expansion and enlisted the help of the Costa Rican Company, Invermaster, to act as its broker and secure the necessary investments for its expansion plans. *Id.* ¶ 20.

Around September 15, 2011, Roberto Ponce-Romay ("Ponce"), representing himself as president of Invermaster, told Total-Pet that it would need $5,000,000 USD in equity, $3,500,000 USD in a mezzanine loan, and $6,000,000 USD in debt in order to finance the expansion. *Id.* ¶¶ 20, 22. Around September 16, 2011, Ponce emailed Moreno, the president of Total-Pet, to tell him that German bank DEG and other multilateral organizations were interested in investing in Total-Pet's expansion. *Id.* ¶ 24. Allegedly, Ponce then told Moreno that the European banks and multilateral organizations found the expansion to be too small. *Id.* ¶ 26. According to Total-Pet, Ponce explained that the only way for Total-Pet to receive investment and carry out the expansion was through an established fund such as Coreco. *Id.* ¶¶ 26, 27. Coreco, a Delaware limited

2

partnership, would receive funds from European banks and multilateral organizations and then use those funds to make loans to Total-Pet for the expansion. *Id.*

Around December 30, 2011, Coreco and CCAF executed an initial bridge loan agreement to provide Total-Pet with a loan of $1,500,000 USD, which would later be converted to equity. *Id.* ¶ 33. Around October 9, 2012, Coreco and CCAF entered into a loan agreement with TP, Total-Pet, and New World. *Id.* ¶ 38. The agreement stated that Coreco was to loan $770,935 USD to TP—evidenced by a convertible promissory note ("Note 1")—and CCAF was to loan TP $4,380,315 USD—also evidenced by a promissory note ("Note 2"). New World also received an $8,500,000 USD loan from Banco Nacional de Costa Rica. *Id.*

Ponce notified Total-Pet that they still required $1,500,000 USD to fund the expansion. *Id.* ¶ 46. Around May 14, 2013, Coreco entered into another convertible promissory note with Total-Pet for $225,000 USD ("Note 3"). *Id.* ¶ 47. CCAF also entered into another promissory note with Total-Pet for $1,275,000 USD ("Note 4"). *Id.* Both notes granted Coreco the option to acquire majority ownership in TP, Total-Pet, and New World. *Id.* The funding was still insufficient to cover certain additional expenses. *Id.* Muecke, a representative of Coreco, notified Total-Pet that shareholders of TP would need to use their shares as collateral for the additional funding necessary for Total-Pet's expansion. *Id.* ¶ 50. According to Total-Pet, Coreco and CCAF claimed that TP, Total-Pet, and New World breached the terms of the original agreement by being underfunded. *Id.* ¶ 54. Allegedly, as a result of Total-Pet's, TP's, and New World's default, Coreco and CCAF foreclosed on the TP shares pledged as collateral, thereby taking over ownership and control of TP. *Id.* ¶ 55.

## III. STANDARD OF REVIEW

A defendant may move to dismiss a complaint if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While the complaint need not include "detailed factual allegations," it must at least contain "sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). To be facially plausible a claim must be supported by "well-pleaded facts that permit the court to infer more than a mere possibility of misconduct." *Id.* at 679. In evaluating a motion under Rule 12(b)(6), the court accepts all factual allegations in the complaint as true, so long as they are not simply "legal conclusions[s] couched as factual allegations[s]." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "[a] motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington*, 114 F.3d at 1420.

## IV. DISCUSSION

### A. Federal Securities Claim under the Securities Exchange Act of 1934

Section 10(b) of the Exchange Act states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (2012). Rule 10b-5, promulgated under § 10(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

4

  (a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

A plaintiff must allege the following elements to state a claim for a violation of Rule 10b-5: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008). When a case concerns foreign companies, foreign securities or transactions outside of the United States, however, there is an added level of complexity to the Rule 10b-5 pleading requirements. *See Absolute Activist Value Master Fun Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012) (holding that the complaint must sufficiently allege domestic purchases to state a claim under § 10(b)).

The Supreme Court has held that § 10(b) and Rule 10b-5 have no extraterritorial application, applying only to "transactions in securities listed on domestic exchanges[ ] and domestic transactions in other securities." *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010); *see U.S. v. Georgio*, 777 F.3d 125, 134 (3d. Cir. 2015) ("[i]ndeed, Section 10(b) has no extraterritorial reach."). "With regard to securities not registered on domestic exchanges, the exclusive focus [is] on domestic purchases and sales . . . ." *Morrison*, 561 U.S. at 268. To determine whether a purchase or sale is domestic, courts have looked to the location where the parties incurred irrevocable liability—where the

parties became bound to effectuate the purchase or sale. *Absolute Activist*, 677 F.3d at 68. The Third Circuit is in agreement with the Second Circuit that "territoriality under *Morrison* turns on 'where, physically, the purchaser or seller committed him or herself' to pay for or deliver a security." Georgiou, 777 F.3d at 136 (quoting *U.S. v. Vilar*, 729 F.3d 62, 77 n.11 (2d. Cir. 2013)).

To adequately allege a domestic securities transaction in securities not listed on a domestic exchange, the plaintiff must alleged facts leading to a plausible inference "that irrevocable liability was incurred or title was transferred within the United States." *Id.* Facts proving irrevocable liability within the United States include the "formation of contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Absolute Activist*, 677 F.3d. at 69.

Plaintiffs did not allege any facts supporting the notion that the securities at issue were listed on an American stock exchange, and, in fact, concede that point in their brief. (D.I. 43 at 6). Additionally, Plaintiffs did not allege that contracts were formed, purchase orders were placed, title was passed or money was exchanged within the United States in connection with TP, Total-Pet or New World securities.

In the Complaint, there is no mention of where Total-Pet, TP or New World entered into transactions with Defendants. Under the eighth cause of action, the federal securities fraud claim, the Complaint states that "[b]y soliciting TP to transfer its shares as collateral in Note 1, Note 2, Note 3, and Note 4, PONCE, MUECKE, GOLTZ, CORDERO, CORECO, CCAF, and INVERMASTER were offered securities by TP." (D.I. 1 ¶ 10). The Complaint also alleges that Ponce, Muecke, Cordero, Goltz, Coreco, CCAF, and Invermaster violated § 78j and § 73-201 of the Delaware Security Act, in addition to
<021>

violating Rule 10b-5 of the Securities Exchange Act of 1934. *Id.* ¶ 112. None of the above factual averments demonstrate that Total-Pet, TP, New World or Invermaster incurred irrevocable liability within the United States.

The only time there is even a reference to the United States in connection with this action occurs within the section of the Complaint where jurisdictional allegations are laid out. The Complaint states that Coreco and CCAF are limited partnerships doing business in Delaware, and that Muecke and Goltz are individuals doing business in the United States. *Id.* ¶¶ 7, 8. The Complaint also states that "[t]he contractual instruments that are the subjects of this action are governed by the laws of the state of Delaware." *Id.* ¶ 14. Plaintiffs allege no facts in the general allegations section of the Complaint linking the transactions that occurred between Plaintiffs and Defendants to the United States. The limited facts that connect this action to the United States are insufficient to satisfy the Plaintiffs' burden of alleging domestic securities fraud. *See Absolute Activist*, 677 F.3d at 70 (explaining that a complaint alleging that defendant was a resident or corporation of California "does not lead to the plausible inference that the Funds became irrevocably bound to purchase U.S. Penny Stocks in the United States"); *see also Arco Capital Corp. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 541 (S.D.N.Y. 2013) (asserting that the law that governed the relevant contracts was irrelevant to the determination of whether the purchase or sale of the securities at issue occurred within the United States). Thus, Plaintiffs fail to allege facts leading to a plausible inference that a domestic transaction occurred. Consequently, the court must dismiss their federal securities fraud claim under §10(b) and Rule 10b-5.

7

## B. Supplemental Jurisdiction Doctrine

The court must decide whether to exercise supplemental jurisdiction over the remaining state-law claims now that the sole claim grounded in federal law has been dismissed before trial. The court has jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a) because the state-law claims are so related to the federal-law claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2012). Normally, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction" when all federal-law claims are dismissed and only state-law claims remain. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

This case remains in the early stages of litigation. A Joint Status Report was filed on August 10, 2016, explaining that, due to the pending motions to dismiss, discovery has not begun. (D.I. 39 at 5). The court does not find that it would be unfair or inconvenient for Plaintiffs to bring their remaining claims in state court. Judicial economy also favors Plaintiffs bringing their remaining claims in state court. This case has not advanced far enough in this court for there to be a concern that the state court would be duplicating our work. *See Carnegie-Mellon*, 484 U.S. at 351 (explaining that when the single federal-law claim was eliminated early on in the litigation, the District Court had a strong reason to decline to exercise jurisdiction over the state-law claims). Additionally, comity concerns and the state's interest in enforcing its own law persuade the court that Plaintiffs' remaining state law claims should be dismissed without prejudice, so that they may be brought in state court. *See Hagans v. Lavine*, 415 U.S. 528, 548 (1974) (highlighting the preference for

state courts to handle state law claims because they have more familiarity with the controlling principles).

## V.  CONCLUSION

For the foregoing reasons the court will grant Invermaster's motion to dismiss.[1] (D.I. 26). Plaintiffs are granted leave to amend their Complaint if they wish to attempt to plead facts that the purchase or sale of the securities at issue took place within the United States.

Dated: November 21, 2016

UNITED STATES DISTRICT COURT

---

[1] The court grants Invermaster's motion to dismiss because Plaintiffs failed to state a claim upon which relief could be granted by failing to allege facts demonstrating the existence of a domestic securities transaction. Because the same federal securities claim under § 10(b) and Rule 10b-5 is asserted against all Defendants, the claim is dismissed as to all Defendants. D.I. 1 ¶¶ 106–13. As a matter of procedure, the court can only formally grant Invermaster's Motion to Dismiss because it was brought under Federal Rule of Civil Procedure 12(b)(6). See Absolute Activist, 677 F.3d at 67 (stating that, though the district court erroneously dismissed the complaint for lack of subject matter jurisdiction, a footnote indicated the case could have also been dismissed under 12(b)(6), making remand unnecessary). All other Defendants moved to dismiss this case under 12(b)(1) for lack of subject matter jurisdiction. (D.I. 23, 32). Dismissing this case under 12(b)(1) would constitute legal error because Morrison is clear in its assertion that §10(b)'s application to certain conduct is a merits question. See Morrison, 561 U.S. at 254 ("[b]ut to ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question.").